# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MATTHEW D. CAMPBELL,

                    Petitioner,

v.                                                          Case No. 17-CV-1386-JPS

DENISE SYMDON and EMILY KERR,

                    Respondents.                            **ORDER**

## 1.      INTRODUCTION

On February 13, 2009, a jury in the Dodge County Circuit Court found Petitioner Matthew D. Campbell ("Campbell") guilty of second-degree sexual assault of a child, using a computer to facilitate a child sex crime, and causing a child between thirteen and eighteen years of age to view sexual activity. (Docket #14-1). Campbell used a computer to communicate with K.A., a fourteen-year-old girl, that he wanted to have sexual contact with her, and he later went to K.A.'s home while her mother was away, masturbated in front of her, and squeezed her breast from behind while she sat at her computer desk. (Docket #14-12 at 2). Campbell was sentenced to five years' imprisonment to be followed by ten years of extended supervision and thirteen years of probation. (Docket #14-1).

Campbell appealed his convictions, arguing that he received ineffective assistance of counsel in several respects. (Docket #1 at 3–4). The state courts rejected Campbell's arguments, finding that he had not demonstrated that his trial lawyer exhibited deficient performance or that he was prejudiced by his lawyer's alleged errors. Campbell subsequently

filed a post-conviction motion seeking a new trial based on newly discovered evidence. *Id.* at 4–5. The motion was denied by the circuit court, the Wisconsin Court of Appeals affirmed, and the Wisconsin Supreme Court denied Campbell's petition for review. As of February 2018, Campbell was on extended supervision under the control of Denise Symdon and Emily Kerr ("Respondents"), both supervisors in the Wisconsin Department of Corrections. (Docket #14 at 1).

In October 2017, Campbell filed the instant petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of the United States Constitution because his trial lawyer provided ineffective assistance of counsel and the State of Wisconsin ("the State") relied on faulty and misleading evidence to convict him. (Docket #1 at 6–8). Respondents maintain that Campbell has not satisfied his burden of proving that his claims merit relief under the deferential standards set forth in Section 2254. (Docket #22). The Court agrees. Because the state court decisions denying Campbell's claims were not objectively unreasonable, Campbell is not entitled to relief under Section 2254. Accordingly, his petition must be denied.

## 2. BACKGROUND

### 2.1 Trial Proceedings

Campbell was charged in Dodge County Circuit Court with (1) having sexual contact with K.A., a child under the age of sixteen; (2) using a computerized communication system to communicate with an individual who he believed or had reason to believe had not attained the age of sixteen with the intent to have sexual contact or sexual intercourse with that individual; and (3) intentionally causing a child between thirteen and eighteen years of age to view sexually explicit conduct. (Docket #14-18 at

88–90). All three charges stemmed from an incident that occurred on December 28, 2007, in the city of Waupun, Wisconsin. *Id.* Campbell was tried before a jury in February 2009. During direct-examination on the first day of trial,

> [K.A.] testified that Campbell had first contacted her online by an instant messaging program, using a false name. After about a week of exchanging messages, including several sexually explicit ones, [K.A.] invited Campbell to come hang out at her home while her mother was away. After Campbell arrived, [K.A.] finished her breakfast, then took Campbell up to her bedroom, where they watched television. At some point, [K.A.] went downstairs to let the dogs out and, when she returned to her bedroom, Campbell was naked on her bed, masturbating. [K.A.] said that she then went to use her laptop, so that she could face away from Campbell and ignore him, but Campbell came up behind her at her computer desk and squeezed her breast. Shortly thereafter, [K.A.] realized that her mother's boyfriend had come home, and when she advised Campbell of that, he got dressed quickly. [K.A.] told Campbell that he had forgotten to put his underwear on, and saw him put a pair of dark red, Speedo-type underwear into his pocket.

(Docket #14-12 at 2).

During cross-examination, K.A. testified that she did not expect to have sexual contact with Campbell during their planned encounter at her home. (Docket #14-5 at 2). The following day, K.A. was confronted with portions of an Internet chat log containing the instant messaging communications between her and Campbell. (Docket #14-20 at 14–28). "The only reasonable inference to be drawn from the excerpt of the chat log . . . was that [K.A.] expected to have sexual contact with Campbell in her home." (Docket #14-5 at 2–3). K.A. admitted that her testimony from the

previous day—that she never expected to have sex with Campbell—was a lie. *Id.* at 3.

After K.A. admitted to lying under oath, the trial court excused the jury and informed K.A. that she had a constitutional right to remain silent and not to incriminate herself. *Id.* When questioning resumed, K.A.

> invoked her Fifth Amendment right against self-incrimination. The prosecutor moved for the court to grant her immunity, and trial counsel did not object. The court granted the motion. . . .
>
> Trial counsel was then permitted to resume cross-examination. Counsel attacked [K.A.'s] credibility on cross-examination, questioning [K.A.] about her prior testimony at the preliminary hearing in [the] case, her testimony on direct examination at trial, and statements she made to police officers. This included highlighting inconsistencies and admissions by [K.A.] that she had lied on various topics.

*Id.* at 4–5.

Later in the trial, the State called Christine Byars ("Byars"), a criminal analyst with the Wisconsin Department of Justice, as an expert witness regarding computers. (Docket #14-22 at 7–75). Byars testified that temporary internet files are automatically saved to a computer when a web page is accessed. *Id.* at 54. She further testified that the last access date and time on a file is the last time that file was accessed, meaning "the last time that . . . the computer drew upon that temporary internet file." *Id.* at 55–56. Byars agreed that "the computer would be drawing upon that temporary internet file because somebody is looking at that web page on the web." *Id.* at 56.

According to Byars, a computer recovered from K.A.'s bedroom had last accessed timestamps of 2:28 p.m. and 2:46 p.m. on December 28, 2007—the date Campbell was at K.A.'s house. *Id.* at 56, 72. Byars agreed that a

temporary internet file is automatically created when a computer user looks at a web page. She also agreed that the fact the last temporary internet file was at 2:46 p.m. suggested that the user of the computer did not look at any websites after 2:46. *Id.* at 56–57.

After the State rested, defense counsel moved to dismiss the charges, arguing that no rational jury could credit K.A.'s testimony. *Id.* at 76. The trial court denied the motion. *Id.* at 77. The defense then began its case, and Campbell testified in his own defense.

> [Campbell] acknowledged that he had engaged in sexually explicit chats with [K.A.] under a false computer user name, but claimed that he did not know [K.A.'s] age during the chats and that he had taken Ambien the day of the incident and could not remember any of the sexually explicit chats or why he had gone over to [K.A.'s] house. Campbell testified that he did remember he had been laying on [K.A.'s] bed, fully clothed, watching television, when [K.A.] had undressed and tried to get him to have sex with her, and that at no time during the encounter did [K.A.] use her computer.

(Docket #14-12 at 3).

During closing arguments, the prosecutor argued that the timestamp evidence supported K.A.'s version of events:

> So she sits down at the computer, and she goes online. And let's remember that there's evidence to support that. The times are all goofy. Nobody can really set a real good time. But we know somebody was on that computer at 2:46. That's when the defendant says they were just watching TV or sitting around on her bed watching TV. Somebody is on the computer at 2:46 in the afternoon, an hour and 15 minutes before the cops get there.

(Docket #14-23 at 65). The jury ultimately found Campbell guilty of all three charges. *Id.* at 134–37.

## 2.2    Post-Conviction Proceedings

Campbell obtained new counsel for post-conviction proceedings. (Docket #1 at 11). He filed a motion for a new trial on the ground that his trial lawyer was constitutionally ineffective for several reasons. (Docket #14-5 at 5). The trial court denied the motion following a hearing in which Campbell's trial lawyer (and others) testified. (Docket #14-24 and #14-25).

Campbell appealed, arguing (among other things) that his trial lawyer was ineffective for not objecting to or moving to strike K.A.'s direct testimony when she invoked her Fifth Amendment rights on cross-examination and for failing to consult or retain an expert as to the effects of Ambien CR. (Docket #14-2; Docket #14-3; Docket #14-4). On July 24, 2014, the Wisconsin Court of Appeals issued a decision affirming Campbell's judgment of conviction and the order denying his motion for a new trial. (Docket #14-5). Regarding K.A.'s testimony, the appellate court determined that Campbell had failed to demonstrate that his trial lawyer performed deficiently, finding that a motion to strike would have been unsuccessful. *Id.* at 7–10. Because "Campbell was able to conduct a full cross-examination of [K.A.], in the court's view, "there was no basis in this case for striking [her] testimony." *Id.* at 9.

As to the second issue, the appellate court determined that Campbell had failed to demonstrate that he was prejudiced by his trial lawyer's failure to more thoroughly develop a so-called Ambien defense. *Id.* at 12–15. The court limited its analysis to Count Two, concluding "that there is not a reasonable probability that the jury would have acquitted Campbell of using a computer to facilitate a child sex crime." *Id.* at 13. According to the court, "the undisputed evidence strongly support[ed] a jury finding [on that count]." *Id.* at 15.

Campbell sought review of the appellate court's decision, raising the same two issues described above. (Docket #14-6 and Docket #14-7). The Wisconsin Supreme Court summarily denied his petition for review on October 6, 2014. (Docket #14-8). Campbell did not file a petition for certiorari in the United States Supreme Court. (Docket #1 at 4).

Proceeding without the assistance of counsel, on November 12, 2015, Campbell filed a motion for post-conviction relief seeking a new trial pursuant to Wis. Stat. § 974.06. (Docket #1 at 4). He argued that newly discovered evidence showed that Byars's timestamp testimony was invalid, and thus, its use violated his rights to due process and fundamental fairness. *Id.* The alleged newly discovered evidence was an affidavit from Daniel R. Meinke ("Meinke"), a certified examiner on the software Byars used to analyze the seized computer. (Docket #14-9 at 58–60). Meinke opined that "solely relying on last accessed date and time stamps, as a means of validating human user activity on a computer, is faulty and is not generally accepted as a best practice by computer forensic experts." *Id.* at 59. He further opined that "a last accessed date and time stamp attribute is not necessarily recorded as the result of human interaction." *Id.* That is, "automated operating system processes, application processes, and network processes all have the ability to update last accessed date and time stamps of files without a user's knowledge, action, or even physical presence." *Id.* The circuit court rejected Campbell's arguments and denied his motion without a hearing. *Id.* at 83–85.

Campbell appealed again. (Docket # 14-9; Docket #14-10; Docket #14-11.) On June 23, 2017, the Wisconsin Court of Appeals issued a decision affirming the denial of Campbell's § 974.06 motion. (Docket #14-12). The appellate court determined that, at best, Meinke's opinion would have

provided less corroboration for K.A.'s version of events, but it would not have disproven her account altogether. (Docket #14-12 at 4). The court also found that Campbell was negligent in failing to pursue the expert opinion prior to trial. *Id.* at 4–5. Lastly, the court held that, given the strength of other evidence, it was "not reasonably probable that the newly discovered expert opinion would lead to a different result at a new trial." *Id.* at 5.

Again, Campbell sought review of the appellate court's decision. (Docket #14-13 and Docket #14-14.) The Wisconsin Supreme Court summarily denied his petition for review on September 11, 2017. (Docket #14-15).

### 2.3    Federal Habeas Proceedings

On October 11, 2017, Campbell filed a federal habeas petition pursuant to Section 2254 presenting three grounds for relief: (1) trial counsel was ineffective for not moving to strike K.A.'s direct testimony and for not objecting to the immunity given to K.A. during cross-examination; (2) trial counsel was ineffective for not consulting or retaining an Ambien expert to testify at trial; and (3) the State used faulty and misleading forensic testimony to convict him. (Docket #1 at 6–8).

The matter was randomly assigned to United States Magistrate Judge David E. Jones. In accordance with Magistrate Judge Jones's briefing schedule, Campbell filed a brief in support of his petition on March 14, 2018, (Docket #17), Respondents submitted their brief in opposition on July 3, 2018, (Docket #22), and Campbell filed a reply on July 30, 2018, (Docket #23). The matter was randomly reassigned to this Court in October 2019.

### 3.    LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. Under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). In Campbell's case, there are two such decisions under review: the Wisconsin Court of Appeals' July 24, 2014 and June 23, 2017 opinions.

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). A state-court decision is based on an unreasonable determination of the facts "when it 'rests upon fact-finding that ignores the clear and convincing weight of the evidence.'"

*McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)).

AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White*, 134 S. Ct. at 1702).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

4.    **ANALYSIS**

The Court concludes that Campbell is not entitled to relief on any of his claims in light of this demanding standard of review. The Court will address each claim in turn.

**4.1    Ineffective Assistance of Counsel Claims**

The Seventh Circuit's *Blake* opinion neatly summarizes the standards applicable to Campbell's ineffective assistance claims:

> A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 . . . (1984)[.]
>
> To satisfy the first element of the *Strickland* test, appellant must direct the Court to specific acts or omissions by his counsel. In that context, the Court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. The Court's assessment of counsel's performance is "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" [*Id.* at 689.]
> . . .
> To satisfy the second *Strickland* element, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.

*Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013) (citations and quotations omitted).

The *Strickland* test, layered underneath the above-described standard of review, produces the following question for the Court to

answer: whether the Wisconsin Court of Appeals' rulings on Campbell's claims represents an unreasonable application of the *Strickland* standard. *Harrington*, 562 U.S. at 101. As *Blake* explains, claims of ineffective assistance are already assessed with deference to trial counsel. Presenting such claims in the context of a habeas proceeding means that Campbell must not only prove that the Court of Appeals' analysis was wrong, but additionally that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *id.* at 105 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so[.]") (citations and quotations omitted).

### 4.1.1 Ground One: K.A.'s Testimony

Campbell argues that the Wisconsin Court of Appeals unreasonably applied clearly established federal law when it determined that his trial lawyer was not ineffective for not objecting to or moving to strike K.A.'s testimony. (Docket #17 at 5–11.) He maintains that the appellate court erroneously believed that K.A. retained her Fifth Amendment privilege despite voluntarily testifying on direct-examination. Campbell further maintains that counsel's ability to continue cross-examination of K.A. is immaterial to his ineffective assistance claim because, if counsel had moved to strike K.A.'s testimony as soon as she refused to answer further questions, the motion would have been granted, and "the trial would have ended in his favor." (*Id.* at 11.) According to Campbell, his trial lawyer admitted at the post-conviction hearing that he did not know of a basis to

strike K.A.'s testimony, so his failure to so move cannot be considered strategy.

The Wisconsin Court of Appeals reasonably determined that there was no basis to strike K.A.'s testimony. The court accurately noted that striking a witness's testimony after she invokes her right against self-incrimination is generally available only when that invocation denies the defendant's right to confrontation. Indeed, several of the cases Campbell cites in support of his argument—e.g., *United States v. Cardillo*, 316 F.2d 606 (2d Cir. 1963) and *Klein v. Harris*, 667 F.2d 274 (2d Cir. 1981)—analyze a potential motion to strike in the context of a defendant's Sixth Amendment right to confront witnesses. Here, the Court of Appeals did not unreasonably apply clearly established federal law when it held that K.A.'s invocation of her Fifth Amendment rights did not deny Campbell his right to confrontation, as K.A. was granted immunity, and Campbell's trial lawyer was able to thoroughly cross-examine her about her inconsistent answers.

The Supreme Court cases cited by Campbell, *see* (Docket #17 at 7–8), are easily distinguishable from this case. Those cases do not, as Campbell suggests, mandate finding that a witness has waived her Fifth Amendment rights by voluntarily testifying. Rather, they hold that a witness cannot improperly use her Fifth Amendment rights to shield testimony from cross-examination. *See, e.g.*, *Mitchell v. United States*, 526 U.S. 314, 321 (1999) ("It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."). That uncontroversial rule is not implicated here. K.A. was granted immunity to ensure that she continued to testify, including during cross-examination by Campbell's

trial lawyer. In essence, the circuit court replaced K.A.'s shield against further questioning with a shield of immunity for her answers.

Campbell's attempt to freeze the analysis at the precise moment K.A. invoked her right against self-incrimination is unavailing. The parties had already explained to K.A. that she would be granted use and derivative immunity if she continued to testify after invoking her Fifth Amendment rights. Thus, trial counsel never had a basis to argue that he was prevented from questioning K.A. about the details of her direct-examination testimony.

Because the Wisconsin Court of Appeals reasonably determined that there was no basis to strike K.A.'s testimony, the Court does not need to address whether trial counsel had a strategic reason for not moving to strike the testimony or whether Campbell was prejudiced by his lawyer's alleged error. Ground One is without merit.

#### 4.1.2   Ground Two: Ambien Defense

Campbell also argues that the Wisconsin Court of Appeals unreasonably applied clearly established federal law when it determined that he was not prejudiced by his trial lawyer's failure to consult or retain an expert on the effects of Ambien CR. (Docket #17 at 12–17). He maintains that the appellate court erred in applying this argument to only Count Two, the computer crime. According to Campbell, an expert would have corroborated his testimony concerning the side effects of Ambien CR, thereby showing that he lacked intent to have sexual contact with K.A. Expert testimony, in Campbell's view, also would have significantly increased the likelihood that the jury would have believed his testimony that he was not aware of K.A.'s age, that he did not masturbate in front of K.A., and that he did not sexually assault K.A.

The Wisconsin Court of Appeals reasonably determined that Campbell's Ambien defense argument did not appear to apply his convictions for second-degree sexual assault of a child and causing a child under eighteen years of age to view sexual activity. In his state appellate briefs, Campbell limited his Ambien argument primarily to his "chat room behavior." (Docket #14-2 at 38–41 and Docket #14-4 at 10–12). Moreover, at trial, Campbell testified that he remembered being at K.A.'s house, and he provided extensive details about what happened while he was there. (Docket #14-22 at 110–14, 117–42). Thus, the appellate court had no reason to believe that Campbell was alleging that trial counsel's failure to consult or retain an Ambien expert affected his convictions on Count One or Count Three.

The Wisconsin Court of Appeals also reasonably determined that, had Campbell's trial lawyer further developed an Ambien defense, there was not a reasonable probability that the jury would have acquitted Campbell of using a computer to facilitate a child sex crime. The appellate court indicated that the State had to

> present evidence establishing beyond a reasonable doubt that Campbell: used a computer to communicate with [K.A]; believed or had reason to believe that [K.A.] was under the age of sixteen years old; had the intent to have sexual contact with [K.A.]; and did an act, in addition to using the computer, to carry out the intent to have sexual contact with [K.A.].

(Docket #14-5 at 14).

The court noted that the first element was undisputed. As to the second element, the court pointed to Campbell's trial testimony that it was "highly likely" he viewed an online profile where K.A. listed her age as thirteen and appeared to be under sixteen years old. Also, in the online

communications between Campbell and K.A., Campbell commented that K.A. was "so young" and "expressed fear of criminal consequences if the two had sexual contact." *Id.* Regarding intent, the court concluded that the chat logs—wherein Campbell described in graphic detail the sexual contact he wanted to engage in with K.A.—showed that Campbell had an intent to have sexual contact with K.A. *Id.* at 14–15. Finally, the court found that Campbell's meeting K.A. at her home and following her into her bedroom was sufficient to satisfy "the additional act" element. *Id.* at 15.

Campbell has not demonstrated that the Wisconsin Court of Appeals' *Strickland* analysis was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Campbell testified that he first encountered K.A. online on December 27, 2007, while he was searching for people in Waupun. (Docket #14-22 at 84–86). According to Campbell, he and his wife were hoping to invest in real estate, and he wanted "to see what kind of people live in Waupun." *Id.* at 85. He chatted with K.A. for about ten to fifteen minutes; the conversation ended shortly after K.A. asked him to come over, which he thought was "kind of bizarre." *Id.* at 88–89.

Later that day, Campbell obtained a new prescription for Ambien CR. *Id.* at 96–98. At night he took one of his new pills. *Id.* at 98. Campbell claimed that he did not recall a conversation from that night wherein he discussed having sexual contact with K.A. *Id.* at 150–53. Campbell testified that he woke up the next morning at about 7:00 or 8:00 a.m., *id.* at 98, dropped his kids off at their childcare center, and took two more Ambien CRs, *id.* at 101. He remembered being at Radio Shack but did not recall going to Wal-Mart or driving to K.A.'s house. *Id.* at 101–06. Nor did he

remember engaging in a highly graphic sexual conversation with K.A. that morning. *Id.* at 106–07, 109. As the jury verdict reveals, Campbell's testimony supporting his Ambien defense—that he lacked intent to have sexual contact with K.A.—was not credible. Neither the Wisconsin Court of Appeals, nor this Court, can second guess the jury's credibility determinations. The Court finds that Ground Two is also without merit.

### 4.2    Ground Three: Due Process Claim

Finally, Campbell argues that the Wisconsin Court of Appeals unreasonably applied clearly established federal law and based its decision on an unreasonable determination of the facts when it affirmed the order denying his due process claim. (Docket #17 at 18–30). He maintains that the use of Byars's expert trial testimony violated his rights to due process and fundamental fairness because the testimony misled the jury into believing that the State's timestamp evidence conclusively showed that a human user was on K.A.'s computer at the time she claimed Campbell grabbed her breast. In his post-conviction motion, Campbell presented an affidavit from a forensic expert who opined that timestamps can result from an automated computer process. This affidavit, in Campbell's view, demonstrated that Byars's testimony was faulty and unreliable.

Campbell argues that his due process claim should be reviewed under *Napue v. Illinois*, 360 U.S. 264 (1959) and *Giglio v. United States*, 405 U.S. 150 (1972). In *Napue*, the Supreme Court held that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction" and that a new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury. *Napue*, 360 U.S. at 269, 271. The Court reaffirmed these principles in *Giglio*, holding that "deliberate deception of a court and jurors by the presentation

of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio*, 405 U.S. at 153 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

Campbell has failed to demonstrate that the Wisconsin Court of Appeals unreasonably applied *Napue* or *Giglio* to his case. The appellate court reasonably determined that Byars's testimony was not false (or, to use Campbell's preferred term, faulty). Byars testified that a human user accessing a web page would create a last accessed timestamp. (Docket #14-22 at 54–56, 72). She did not claim, or even imply, that human activity was the *only* way a last accessed timestamp could be created. Indeed, Meinke's affidavit states that a last accessed timestamp is "not necessarily" the result of human interaction, meaning it could have been created by a human user, or it could have been created by the computer's automated processes.

The appellate court also reasonably determined that it was not reasonably probable that Meinke's affidavit would have led to a different result at a new trial because the other available evidence was so strong. For example, the court noted that the sexually explicit chat logs between Campbell and K.A. tended to show Campbell's guilt. Also, when Campbell was arrested immediately following the incident, he was not wearing any underwear. This undisputed fact was consistent with K.A.'s claim that Campbell was nude at one point, quickly dressed himself, and forgot to put on his underwear. In other words, the timestamp evidence was not necessary to convict Campbell.

For similar reasons, Campbell has failed to demonstrate that the Wisconsin Court of Appeals' factual determinations were unreasonable. He argues that Byars's testimony was presented as a scientific fact—that is, it did not leave open the possibility of non-human causes of the last accessed

timestamp. The Wisconsin Court of Appeals disagreed. An independent review of the testimony reveals that the appellate court's finding was a reasonable determination of the facts. Byars presented one possible explanation (i.e., a human user) for the last accessed timestamp on K.A.'s computer. She did not, as Campbell suggests, claim that the existence of the timestamp showed that someone was on the computer at that time. Though, as the State argued in closings, it could fairly be inferred from the evidence that K.A. was on her computer while Campbell was in her bedroom. The jury apparently agreed with this reasonable inference and convicted Campbell.

As with Campbell's other claims, Ground Three is without merit.

**5.     CONCLUSION**

Campbell has not shown that the Wisconsin Court of Appeals unreasonably applied Supreme Court precedent in rejecting his ineffective assistance of counsel and due process claims. Likewise, Campbell has not shown that the Wisconsin Court of Appeals' decision rejecting his due process claim was based on an unreasonable determination of the facts in light of the evidence presented in state court. Campbell's petition must, therefore, be dismissed with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Campbell must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further,"

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). For the reasons discussed above, no reasonable jurists could debate whether Campbell's claims have merit. The Court will, therefore, deny Campbell a certificate of appealability.

Finally, the Court closes with some information about the actions that Campbell may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Petitioner Matthew D. Campbell's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Matthew D. Campbell's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2020.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge